# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEROME DRISCOLL,<br><br>  Petitioner,<br><br>  v.<br><br>R. FISHER, JR.,<br><br>  Respondent. | Case No. 1:20-cv-00602-DAD-EPG-HC<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Jerome Driscoll is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In the petition, Petitioner asserts that trial and appellate counsel were ineffective, the state court abused its discretion by denying habeas relief on an actual innocence claim that was not asserted by Petitioner, and the state courts violated California Rule of Court 4.551(c) by failing to issue an order to show cause. For the reasons discussed herein, the undersigned recommends denial of the petition for writ of habeas corpus.

## I.

## BACKGROUND

On June 10, 2015, Petitioner was convicted by a jury in the Madera County Superior Court of corporal injury to a cohabitant, false imprisonment, and forcible sexual penetration. (CT[1] 203). Petitioner was sentenced to an imprisonment term of four years for corporal injury

---
[1] "CT" refers to the Clerk's Transcript on Appeal lodged by Respondent on September 17, 2020. (ECF No. 17).

1

and ten years for sexual assault. Petitioner's three-year sentence for false imprisonment was stayed. (CT 203; 5 RT[2] 1216).

On November 1, 2017, the California Court of Appeal, Fifth Appellate District affirmed the judgment. People v. Driscoll, No. F072233, 2017 WL 4943947 (Cal. Ct. App. Nov. 1, 2017). On January 10, 2018, the California Supreme Court denied the petition for review. (LDs[3] 13, 14). Petitioner filed multiple state habeas petitions, which were all denied. (LDs 15–24).

On April 28, 2020, Petitioner commenced the instant proceeding by filing a federal habeas petition, which alleges the following claims for relief: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; (3) abuse of discretion by the state court in denying habeas relief on an actual innocence claim that was not asserted by Petitioner; and (4) violation of California Rule of Court 4.551(c) by failing to issue an order to show cause. (ECF No. 1). Respondent filed an answer, and Petitioner filed a traverse. (ECF Nos. 16, 24).

## II.

## STATEMENT OF FACTS[4]

**I. Sexual Assault of Grace O.**

In October 2014, defendant and his girlfriend, Amanda O., were living together. Amanda's younger sister, Grace O., was 14 years old and lived at home with her parents. In early October, Grace and Amanda's son went to a football game and then to defendant's house. That night, Grace and Amanda were in the living room when they saw something animal-like run past the sliding glass door. They opened the door to look and, seeing nothing, shut it again. Defendant came out of his room. He appeared to be angry and told Grace she had better not have her boyfriend come over. Grace did not know defendant well. She had only seen him on two prior occasions, when he and Amanda came over for dinner. Defendant's anger scared her somewhat and she cried.

That night, Grace slept on the floor of defendant's son's room. The next morning, everything seemed fine again. Defendant and Amanda dropped Grace, Amanda's son, defendant's son and a friend of defendant's son off at a nearby swimming hole. Defendant and Amanda picked them up several hours later in the mid-afternoon and they went back to defendant's house. Amanda told Grace to pick some potatoes for dinner and then left. Defendant's son and Amanda's son were playing video games in the house and had headphones on.
Grace went outside to the garden and was on her knees picking potatoes when defendant came up to her. He did not address her and did not answer when she

---

[2] "RT" refers to the Reporter's Transcript on Appeal lodged by Respondent on September 17, 2020. (ECF No. 17).
[3] "LD" refers to the documents lodged by Respondent on November 21, 2018. (ECF No. 15).
[4] The Court relies on the California Court of Appeal's November 1, 2017 opinion for this summary of the facts of the crime. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

asked if he needed anything. Defendant grabbed Grace's arms and pushed her toward the tree line. As she struggled, he pulled down her pants and penetrated her vagina with his fingers. Grace kept telling him to stop and she screamed twice. Defendant stopped after she screamed the second time, and she pulled her pants up and went back to the house. Grace testified defendant did not say a word during the assault and his face was expressionless.

Grace, who lived in Coarsegold, did not know the address of defendant's house or where it was located, other than somewhere on Road 600 in the town of Ahwahnee. When she got back to the house, she called her boyfriend and asked him to pick her up at the Hitching Post, a store and bar approximately five miles away. Amanda returned and Grace asked for a ride to the Hitching Post but did not tell Amanda what happened. Amanda told her that defendant would take her.

During the ride to the Hitching Post, Grace was scared. Defendant stroked her left leg during the drive. She kept pushing his hand away and he kept returning it to her leg. She testified that they did not speak during the ride.

When they arrived at the Hitching Post, Grace's boyfriend was waiting for her. He drove her home and, approximately 30 minutes into the drive, she told him defendant had touched her but he was unable to get any further information from her. She appeared quiet and sad. She later told him what happened.

When Grace's father got up for work early the next morning, she told him defendant touched her and "[h]e freaked out."[5] Grace subsequently reported the assault to her school guidance counselor and the counselor called the sheriff's department. As a result of the assault, Grace sustained scratches to her arms, one of which left a scar.

**II. Domestic Violence Against Amanda O.**

Later that month, Amanda called her mother, Paula O. Amanda was scared and said she needed to get out of there. Paula was still out of town caring for her mother so she called a friend of Amanda's, Patricia L., and asked her to pick Amanda up.

Amanda was waiting for Patricia at the bottom of the driveway to defendant's house. Amanda's eyes were black, she was walking slowly, holding her ribs and she was hunched over. The top of her head felt mushy to Patricia and her ribs felt fractured. Amanda told Patricia defendant punched her until she lost consciousness and she then woke up to him punching her. Patricia started to cry because she had "never seen anybody look like that before." Patricia took Amanda to her own house first and then later to Amanda's parents' house. Patricia wanted Amanda to go to the emergency room and file a police report but Amanda refused and it eventually cost them their friendship.

Paula returned home on November 3, 2014, and described Amanda as "brutalized." Amanda had two black eyes and her face was severely beaten. She was unable to stand, walk or lie down to sleep, and she had trouble breathing. She had to stay in a sitting position and needed to be lifted to stand up. Paula testified Amanda told her defendant hit, kicked and stomped her, causing her to pass out. Defendant would wait for her to wake up and then hit her again. Amanda refused to see a doctor, however, and would not allow her parents to photograph her

---

[5] At the time, Grace's mother was out of town caring for her own mother.

3

injuries. Paula testified Amanda said she tried to leave on numerous occasions and defendant would not let her.

Paula subsequently contacted the police and on November 7, 2014, Madera County Sheriff's Deputy Brian Cunnings came to the house to take a report. He observed residual bruising around Amanda's eyes and cheeks, and she held her sides in pain. She refused medical treatment, however, and he did not take any pictures because his camera battery was dead. Amanda told Cunnings defendant wanted to know the name of someone who had been at the house and he beat her after she was unable to remember. Amanda also told him defendant would not let her leave. When Cunnings talked to defendant, he denied hitting Amanda but admitted choking her to the ground twice.

**III. Prior Uncharged Sexual Offenses and Acts of Domestic Violence**

### A. Sex Offense Against S.W.

In the spring of 1998, S.W. was 15 years old. Her friends Heidi and Kathryn M. were 14 years old.[6] S.W. testified that she and Heidi contacted defendant to obtain some marijuana.[7] Defendant showed up at S.W.'s house with a friend and the four then smoked marijuana in a trailer next to S.W.'s grandmother's house. S.W. noticed the marijuana had white powder on it. Defendant told her it was cocaine. After she smoked it, she felt "[v]ery, very high" and "[b]lacked out."

S.W. woke up later to find defendant on top of her. It was sometime during the night and still dark outside. Her pants were off but her underwear was still on. Everything was a blur. She pushed defendant and told him to get off of her. He said okay and she blacked out again. S.W. next woke to defendant "telling [her] that if [she] told anyone he would fucking kill [her] and the door shutting on the trailer." S.W. later woke up again and it was daylight. Her bottoms were off but she still had her shirt on. Her vagina was sore, uncomfortable and bloody, and there was blood on the blanket underneath her. S.W. testified she did not tell anyone what happened.

Kathryn M. testified that she was there that night with S.W., Heidi, defendant and defendant's friend. She knew defendant because she had dated his brother. The group was together drinking and smoking pot. Kathryn and Heidi were drunk and lying down on the floor in one of the rooms after "decid[ing] to pass out." Kathryn woke up to Heidi "getting loud with [defendant]." It was approximately 1:00 in the morning and he was on top of Heidi trying to kiss her. Heidi grabbed a pocketknife from her boot and told defendant to get off. Defendant got off and said, " 'If you are not going to play, then I'm just going to go play with your friend, [S.W.].' " Kathryn and Heidi went back to sleep.

The next morning, Kathryn gathered her things and her parents picked her up. She did not see S.W. that morning. S.W. later told her and Heidi that defendant had raped her but S.W. did not want to go to the police.

### B. Sex Offense Against Danielle G.

In 1999, Danielle G. went to a barbecue at defendant's mother's house with her friend, Greg. She was 14 years old at the time. There were 10 to 15 men present

---

[6] Heidi died several years before trial.
[7] Defendant was 19 or 20 years old in the spring of 1998.

4

and she was the only girl. People were drinking beer and tequila at the barbecue. Danielle drank a bottle of tequila and was extremely intoxicated. She was unable to walk, talk or stay awake. Danielle drifted in and out of consciousness. She recalled being in a room with coats at some point and throwing up on the bed.

When Danielle came to later, she was outside and some of the people at the barbecue decided defendant would take her home. She did not know him but estimated he was in his early 20's. Defendant drove Danielle to his apartment, telling her he needed to stop and get something first. He helped her inside. Someone else was there and she recalled that person leaving before she blacked out again.

Danielle woke up on the couch without any clothes on. Defendant was on top of her trying to insert his penis into her vagina. Danielle testified she was a virgin so did not really understand what was happening but she felt burning pain in her vagina. She told defendant it hurt and asked him to stop several times. After attempting to penetrate her approximately four times, defendant finally stopped. Defendant told her not to tell anyone because he could get in a lot of trouble. He also told her that he used to watch her walk home from school and he wanted to offer her a ride but was too scared. Danielle testified she was terrified and embarrassed. After defendant took her home, she told her sister what happened.

**C. Domestic Violence Against Amber L.**

Amber L. had been in a five- to six-year long relationship with defendant and they have one child together. She testified when their son was three or four weeks old, defendant became enraged over a spoiled steak and threw it at Amber. The steak hit Amber in the face and then slid down on their son, who was in her arms. Amber started crying and they started screaming at each other. Defendant slid a long dining table bench into Amber's shins, which caused her to double over in pain. Defendant grabbed two glasses and threw them at Amber.

Amber then put the baby down to clean up the glass. As she was cleaning up, defendant grabbed her, rolled her up in the living room floor rug and started kicking her around. Defendant kicked off Amber's acrylic nails, causing her fingers to bleed. Defendant also kicked her in the face, threw her around and told her that if she told anyone, "he was going to cut [her] up in little pieces and burn [her] in the fireplace." After he was done and walked away, Amber got out of the rug and tended to their screaming son.

That night, they had to pick up defendant's other son, so they drove to North Fork. During the drive, defendant was "socking [her] in the arm," screaming at her over the steak and threatening to chop her up and burn her. When they stopped for gas and defendant went inside to buy a drink, Amber took the truck and drove to her mother's house. Approximately six weeks later, Amber returned to defendant.

Amber testified about another fight during which defendant slammed her head into the bedroom wall five or six times, which knocked a hole in the wall and made her head bleed. Defendant's mother was in the house and tried to intervene but defendant shut and locked the bedroom door. Defendant continued to hit Amber. After his mother said something he did not like, defendant grabbed her by the arm, walked her to her car and made her leave. While defendant was escorting his mother to her car, Amber called her mother at work and asked her to come home. Amber's mother came home and called the police on the way.

5

> Approximately four or five months later, Amber and defendant's relationship ended for good. Amber testified that defendant rolled her up in the rug and kicked her at least once a week, so it happened "all the time." She also testified defendant hit her throughout their relationship and she made numerous reports to the police, but never followed through with them.

Driscoll, 2017 WL 4943947, at *1–4 (footnotes in original)

## III.

## STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged convictions arise out of the Madera County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of AEDPA and is therefore governed by its provisions.

Under AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Davis v. Ayala, 576 U.S. 257, 268–69 (2015); Harrington v. Richter, 562 U.S. 86, 97–98 (2011); Williams, 529 U.S. at 413. Thus, if a petitioner's claim has been "adjudicated on the merits" in state court, "AEDPA's highly deferential standards" apply. Ayala,

576 U.S. at 269. However, if the state court did not reach the merits of the claim, the claim is reviewed *de novo*. Cone v. Bell, 556 U.S. 449, 472 (2009).

In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. In addition, the Supreme Court decision must "'squarely address[] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA and the Court must defer to the state court's decision. Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2008) (alterations in original) (quoting Wright v. Van Patten, 552 U.S. 120, 125, 123 (2008)).

If the Court determines there is clearly established Federal law governing the issue, the Court then must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A state court decision involves "an unreasonable application of[] clearly established Federal law" if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Richter, 562 U.S. at 102. That is, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

If the Court determines that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," and the error is not structural, habeas relief is nonetheless unavailable unless it is established that the error "had substantial and injurious effect or influence" on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)

(internal quotation mark omitted) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

AEDPA requires considerable deference to the state courts. Generally, federal courts "look through" unexplained decisions and review "the last related state-court decision that does provide a relevant rationale," employing a rebuttable presumption "that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). This presumption may be rebutted "by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." Id.

"When a federal claim has been presented to a state court[,] the state court has denied relief," and there is no reasoned lower-court opinion to look through to, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. Where the state court reaches a decision on the merits and there is no reasoned lower-court opinion, a federal court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013). "Independent review of the record is not *de novo* review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). The federal court must review the state court record and "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 102.

## IV.

## DISCUSSION

### A. Ineffective Assistance of Counsel

In his first and second claims for relief, Petitioner asserts ineffective assistance of trial counsel for allowing Petitioner's domestic violence and sexual assault charges to be joined for

trial and ineffective assistance of appellate counsel for failure to raise on direct appeal trial counsel's error. (ECF No. 1 at 5, 7).[8] Respondent argues that "Petitioner cannot show that the California Supreme Court's rejection of his claims was objectively unreasonable under controlling authority of the United States Supreme Court, so his claim[s] here must fail." (ECF No. 16 at 14).

1. Strickland Legal Standard

The clearly established federal law governing ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668 (1984), which requires a petitioner to show that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." Id. at 687. To establish deficient performance, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness" and "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 688, 687. Judicial scrutiny of counsel's performance is highly deferential. A court indulges a "strong presumption" that counsel's conduct falls within the "wide range" of reasonable professional assistance. Id. at 687. To establish prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A court "asks whether it is 'reasonable likely' the result would have been different. . . . The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 111–12 (citing Strickland, 466 U.S. at 696, 693).

When § 2254(d) applies, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Richter, 562 U.S. at 101. Moreover, because Strickland articulates "a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "The

---

[8] Page numbers refer to the ECF page numbers stamped at the top of the page.

standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Richter, 562 U.S. at 105 (citations omitted). Thus, "for claims of ineffective assistance of counsel . . . AEDPA review must be 'doubly deferential' in order to afford 'both the state court and the defense attorney the benefit of the doubt.'" Woods v. Donald, 575 U.S. 312, 316–17 (2015) (quoting Burt v. Titlow, 571 U.S. 12, 15 (2013)). When this "doubly deferential" judicial review applies, the appropriate inquiry is "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105.

    2.  Analysis

Petitioner's ineffective assistance of trial counsel and appellate counsel claims were raised in all of Petitioner's state habeas petitions. (LDs 15, 17, 19, 21, 23). The Madera County Superior Court denied relief in a reasoned decision. (LD 16). The California Court of Appeal denied Petitioner's three subsequent petitions. The first two denials were without prejudice with citation to People v. Duvall, 9 Cal.4th 464, 474 (Cal. 1995) ("The petition should both (i) state fully and with particularity the facts on which relief is sought [citations], as well as (ii) include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations."). (LDs 18, 20). The California Court of Appeal summarily denied the third petition. (LD 22). On April 15, 2020, the California Supreme Court summarily denied Petitioner's state habeas petition. (LD 24).

As federal courts "look through" summary denials and review "the last related state-court decision that does provide a relevant rationale," Wilson, 138 S. Ct. at 1192, this Court will examine the October 18, 2018 decision of the Madera County Superior Court.

In denying Petitioner's ineffective assistance of counsel claims, the Madera County Superior Court stated:

> **II.    PETITIONER'S PETITION FAILS TO STATE A PRIMA FACIE CASE OF FOR [*sic*] RELIEF; THEREFORE, THE PETITION IS DENIED IN ITS ENTIRETY.**
>
> Our state Constitution guarantees that a person improperly deprived of his or her liberty has the right to petition for a writ of habeas corpus. (Cal. Const., art. I, § 11; see *In re Clark* (1993) 5 Cal.4th 750, 764, fn. 2.) "Because a petition for a writ

of habeas corpus seeks to collaterally attack a presumptively final criminal judgment, the petitioner bears a heavy burden initially to *plead* sufficient grounds for relief, and then later to *prove* them. For purposes of collateral attack, all presumptions favor the truth, accuracy, and fairness of the conviction and sentence; *defendant* thus must undertake the burden of overturning them. Society's interest in the finality of criminal proceedings so demands, and due process is not thereby offended." (*People v. Duvall* (1995) 9 Cal.4th 464, 474–475, italics in original, citing *People v. Gonzalez* (1990) 51 Cal.3d 1179, 1260.) "The state may properly require that a defendant obtain some concrete information on his own before he invokes collateral remedies against a final judgment." (*People v. Gonzalez*, *supra*, 51 Cal.3d at p. 1260.)

"To satisfy the initial burden of pleading adequate grounds for relief, an application for habeas corpus must be made by petition, and '[i]f the imprisonment is alleged to be illegal, the petition must also state in what the alleged illegality consists.' (Pen. Code, § 1474, subd. 2.) The petition should both: (i) state fully and with particularity the facts on which relief is sought [citations], as well as (ii) include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations. [citations]." (*People v. Duvall*, *supra*, 9 Cal.4th 464, 474.) "Conclusory allegations made without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing." (*People v. Karis* (1988) 46 Cal.3d 612, 656.) Reviewing courts will presume the regularity of proceedings that resulted in a final judgment, and the subsequent mandate is that the burden is on the petitioner to establish grounds for his release. (See *Duvall*, *supra*, 9 Cal.4th 464, 474; *Gonzalez*, *supra*, 51 Cal.3d at p. 1260; see also *In re Williams* (1920) 183 Cal. 11, 14 [the burden of proof was necessarily on the prisoner]; *In re Oxman* (1950) 100 Cal.App.2d 148, 150–151 [holding that the court was "unable to determine the matters at issue for lack of a record. While petitioner was apparently aware of the fact that such record was essential, he took no steps to provide it. The burden was upon him to do so."].)

An appellate court receiving such a petition evaluates it by asking whether, assuming the petition's factual allegations are true, the petitioner would be entitled to relief. (See *In re Clark*, *supra*, 5 Cal.4th 750, 769, fn. 9; *In re Lawler* (1979) 23 Cal.3d 190, 194.) If no prima facie case for relief is stated, the court will summarily deny the petition. (See *Clark*, *supra*, at p. 769, fn. 9; *In re Hochberg* (1970) 2 Cal.3d 870, 875, fn. 4.)

  a. ***Ineffective assistance of Counsel Grounds 1 and 2:***

    i. <u>*Failure to Present Issue on Direct Appeal*</u>

"Habeas corpus is not a 'substitute for a writ of error' [citation] . . . '[i]t is well settled that a writ of habeas corpus ordinarily may not be employed as a substitute for an appeal.' [citations]." (*In re Harris* (1993) 5 Cal.4th 813, 826–827.) The court in *Harris* reasoned as follows:

> "Habeas corpus may thus provide an avenue of relief to those unjustly incarcerated when the normal method of relief--i.e., direct appeal--is inadequate. Unlike review on direct appeal, habeas corpus does not simply inquire into the correctness of the trial court's judgment. The scope of habeas corpus is more limited. Although the writ of habeas corpus is directed against the custodian of one who is illegally confined, it will reach out to

correct errors of a fundamental jurisdictional or constitutional type only. (*In re Winchester*, *supra*, 53 Cal.2d at p. 531.)

The specialized nature of the remedy itself compels the conclusion that--absent unusual circumstances--the aggrieved party should first appeal before resorting to habeas corpus. In this way, habeas corpus is preserved as an avenue of relief to those for whom the standard appellate system failed to operate properly.

Proper appellate procedure thus demands that, absent strong justification, issues that could be raised on appeal must initially be so presented, and not on habeas corpus in the first instance. **Accordingly, an unjustified failure to present an issue on appeal will generally preclude its consideration in a postconviction petition for writ of habeas corpus**. (*Dixon*, *supra*, 41 Cal.2d 756.) **'[H]abeas corpus cannot serve as a substitute for an appeal, and, in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment . . . .'** [citations]." (*Harris*, *supra*, at pp. 828–829, emphasis added.)

Thus, claims that could have been raised on appeal are not cognizable on habeas corpus unless the petitioner can show that: (1) clear and fundamental constitutional error strikes at the heart of the trial process; (2) the court lacked fundamental jurisdiction; (3) the court acted in excess of jurisdiction not requiring a redetermination of facts; or (4) a change in law after the appeal affected the petitioner. (*In re Dixon* (1953) 41 Cal.2d 756, 759; *In re Harris*, *supra*, 5 Cal.4th at pp. 829–842.)

ii. *Failure to Object To Joinder is Not in and of Itself Ineffective Assistance of Counsel*

Petitioner argues that he was denied due process and a fair trial, based on the ineffective assistance of his trial counsel, and appellate counsel (1) To not contest the joinder of the two cases; and (2) failure of appellate counsel to appeal trial counsel's failure.

As indicated above, a petition for writ of habeas corpus should attach as exhibits all reasonably available documentary evidence or affidavits supporting the claim. *(People v. Duvall*, *supra*, 9 Cal.4th 464, 474.) "When a habeas corpus petition is prepared by the defendant in propria persona, [courts] require that he 'allege with particularity the facts upon which he would have a final judgment overturned.' [citation] . . . Conclusory allegations made without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing. . . . 'The burden of sustaining a charge of inadequate or ineffective representation is upon the defendant. The proof . . . must be a demonstrable reality and not a speculative matter.' [citation]." *(People v. Karis*, *supra*, 46 Cal.3d 612, 656.)

"To demonstrate that a defendant has received constitutionally inadequate representation by counsel, he or she must show that (1) counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness under prevailing professional norms; *and* (2) counsel's deficient performance subjected the defendant to prejudice, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant."

12

(*In re Alvernaz* (1992) 2 Cal.4th 924, 936–37, italics in original; see *Strickland v. Washington* (1984) 466 U.S. 668, 694 [holding that "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."].) "That probability must be one sufficient to undermine confidence in the outcome of the trial. [citations]." (*People v. Karis*, *supra*, 46 Cal.3d 612, 657, see *Strickland*, *supra*, at p. 694.) It is not a court's duty to second-guess trial counsel, and great deference is given to trial counsel's tactical decisions. See *In re Avena* (1996) 12 Cal.4th 694, 722.)

Further, "the defendant must affirmatively show that the omissions of defense counsel involved a critical issue, and that the omissions cannot be explained on the basis of any knowledgeable choice of tactics." (*People v. Floyd* (1970) 1 Cal.3d 694, 709, overruled on other grounds by *People v. Wheeler (*1978) 22 Cal.3d 258, 287, fn. 36.) "It is not sufficient to allege merely that the attorney's tactics were poor, or that the case might have been handled more effectively. [citations]." (*Ibid*.)

First, similar to the issues outlined above, Petitioner offers no documentary evidence to support his claim, in the form of a declaration or otherwise. See *People v. Duvall*, *supra*, 9 Cal.4th 464, 474.) This unsupported allegation is insufficient to entitle petitioner to habeas relief.

Further, and more fundamentally, Petitioner has failed to articulate how the alleged actions by trial counsel, even if taken as true, resulted in prejudice, such that there is a "reasonable probability that, but for the attorney's error(s), the result would have been different." (*People v. Karis*, *supra*, 46 Cal.3d 612, 657.) Thus, based on these procedural and substantive omissions and irregularities, Grounds 1 and 2 are insufficient to entitle Petitioner to relief.

Moreover, Petitioner makes bare allegations that the cases were not proper for joinder but does not cite to the record of any facts that establish that such cases were not proper for joinder other than citing the language of the statute.

Additionally, Petitioner has failed to explain why his claim was not made on direct appeal, and none of the exceptions to the rule that "habeas corpus is not an available remedy for any claim that was or could have been raised on direct appeal" have been cited. (*Harris*, *supra*, at pp. 829–842.) Petitioner is attempting to bootstrap this issue by arguing it was not presented on appeal because appellate counsel was also rendered ineffective assistance on this issue by not raising it.

Similar to the issue above regarding Petitioner's other claim of ineffective assistance of counsel, even taking all of Petitioner's as true, he has failed to allege how the actions of trial counsel resulted in prejudice, such that there is a "reasonable probability that, but for the attorney's error(s), the result would have been different." (*People v. Karis*, *supra*, 46 Cal.3d 612, 657.) Petitioner's position seems to be inasmuch as trial counsel did not oppose the joinder of the cases it is therefore evidence of ineffective assistance of counsel. Petitioner does not address the substantial amount of evidence that was presented against him at trial as to both cases.

Based on these procedural and substantive omissions and irregularities, Grounds 1 and 2 are insufficient to entitle Petitioner to relief.

(LD 16).

13

A federal court will not review a petitioner's claims if the state court has denied relief on those claims pursuant to a state law procedural ground that is independent of federal law and adequate to support the judgment. Coleman v. Thompson, 501 U.S. 722, 729–30 (1991). This doctrine of procedural default is based on the concerns of comity and federalism. Id. at 730–32. In determining whether a state procedural ruling bars federal review, the Court looks to the "last reasoned opinion on the claim." Ylst, 501 U.S. at 804. "Where there has been one reasoned state judgment rejecting a federal claim, [the Court presumes] later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground" unless "strong evidence can refute" the presumption. Id. at 803, 804.

Citing to People v. Duvall, 9 Cal.4th 464, 474 (1995), the Madera County Superior Court denied Petitioner's ineffective assistance of counsel claims based, in part, on Petitioner's failure to offer documentary evidence in support of his claims. (LD 16). Respondent argues that the "California Supreme Court could have reasonably rejected Petitioner's claim on the basis that he failed to adequately support it." (ECF No. 16 at 16). Ordinarily procedural bar issues are resolved first, but courts have recognized that "[p]rocedural bar issues are not infrequently more complex than the merits issues . . . so it may well make sense in some instances to proceed to the merits if the result will be the same." Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) (citing Lambrix v. Singletary, 520 U.S. 518, 525 (1997)).

It is unclear whether denial of relief based on failure to offer documentary evidence is a state law procedural ground that is independent of federal law and adequate to support the judgment. See Hoang v. Madden, No. 8:17-cv-00495-RGK-KES, 2020 WL 5665809, at *7 (C.D. Cal. Aug. 14, 2020) (citing Kamfolt v. Lizarraga, No. 17-cv-00970-HSG, 2019 WL 917424, at *6 (N.D. Cal. Feb. 25, 2019) (citing cases in which district courts have noted uncertainty about whether Duvall's procedural requirement of attaching reasonably available documentary evidence gives rise to procedural default)), report and recommendation adopted, 2020 WL 5658346 (C.D. Cal. Sept. 21, 2020). Accordingly, the Court will proceed to review the ineffective assistance of counsel claims on the merits applying AEDPA deference. See Apelt v. Ryan, 878 F.3d 800, 825 (9th Cir. 2017) ("[W]hen a state court 'double-barrels' its decision—

holding that a claim was procedurally barred and denying the claim on its merits—both its procedural default ruling and its merits ruling are entitled to deferential review by federal courts, as intended by AEDPA.").[9]

### a. Trial Counsel

In his first claim for relief, Petitioner asserts that trial counsel was ineffective for requesting that Petitioner's domestic violence charge and sexual assault charge be joined for trial. (ECF No. 1 at 5). Petitioner argues that trial counsel joined the two charges, in violation of California Penal Code section 954. (Id. at 36). Petitioner contends that trial counsel's error resulted in prejudice because evidence of each charge was not cross-admissible and the "domestic violence case brought in evidence which demonstrated hatred and cruelty, while the sexual assault case inflamed the jury against the petitioner." (Id. at 38).

The Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). This "presumption has particular force where a petitioner bases his ineffective-assistance claim solely on the trial record, creating a situation in which a court 'may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive.'" Yarborough v. Gentry, 540 U.S. 1, 8 (2003) (quoting Massaro v. United States, 538 U.S. 500, 505 (2003)).

Here, Petitioner fails to overcome the strong presumption that counsel's request to join Petitioner's domestic violence and sexual assault charges for trial falls within the wide range of

---

[9] The Court notes that the Madera County Superior Court also denied Petitioner's ineffective assistance of counsel claims based, in part, on Petitioner's failure to raise the issues on direct appeal. (LD 16). "Under the so-called '*Dixon* bar,' a defendant procedurally defaults a claim raised for the first time on state collateral review if he could have raised it earlier on direct appeal." Johnson v. Lee, 136 S. Ct. 1802, 1804 (2016) (citing In re Dixon, 41 Cal. 2d 756, 759, 264 P. 2d 513, 514 (1953)). Although the Dixon bar "qualifies as adequate to bar federal habeas review," Johnson, 136 S. Ct. at 1806, procedural default is an affirmative defense that the state must assert; otherwise the defense is waived, Vang v. Nevada, 329 F.3d 1069, 1073 (9th Cir. 2003). Here, Respondent has not asserted that Petitioner's claims have been procedurally defaulted due to failure to raise the issues on direct appeal. Moreover, the Dixon bar "do[es] not apply . . . to claims of ineffective assistance of trial counsel, even if the habeas corpus claim is based solely on the appellate record." In re Robbins, 18 Cal. 4th 770, 813 n.34 (1998). "While it is unusual to reject a state court's use of a procedural bar on the ground that it was erroneously applied . . . an erroneously applied procedural rule does not bar federal habeas review." Sivak v. Hardison, 658 F.3d 898, 907 (9th Cir. 2011).

reasonable professional assistance. Joinder was permissible under state law. See People v. Arias, 13 Cal. 4th 92, 127 (1996) (holding that that trial court was correct in its "determination that the offenses, all involving assaultive behavior, were of the same class, and thus properly joinable"); People v. McGee, No. C043922, 2005 WL 859411, at *10 (Cal. Ct. App. Apr. 15, 2005) (citations omitted) ("Offenses are of the same class of crimes if they share common characteristics or attributes, such as whether they are assaultive in nature. Domestic violence is an assaultive crime. Because the sex offenses charged in counts one through four are also assaultive, the charged offenses are all of the same class and therefore meet the initial threshold for joinder."), as modified (Apr. 27, 2005). Further, if, as alleged by Petitioner, the unlawful sexual penetration charge was fabricated by the minor in retaliation for mistreatment of the minor's older sister, it would be reasonable for trial counsel to join the cases in order to pursue this theory and to have a single jury evaluate all the evidence and both alleged victims' credibility. Although Petitioner asserts that trial counsel requested joinder solely to ease his caseload, (ECF No. 1 at 36), it was not objectively unreasonable for the state court to reject this contention where there is no evidence in the record to support this allegation other than Petitioner's self-serving statement.

Petitioner also fails to show that it was objectively unreasonable for the state court to conclude that Petitioner had not established that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Here, the evidence presented at trial relating to each charge was distinct and easy to keep separate. See Bean v. Calderon, 163 F.3d 1073, 1085 (9th Cir. 1998) ("[P]rejudice generally does not arise from joinder when the evidence of each crime is simple and distinct[.]"). Additionally, the record before this Court does not establish that there was a significant disparity in the relative strength of the two charges. See Sandoval v. Calderon, 241 F.3d 765, 772 (9th Cir. 2000) (noting that joinder is improper "where the State joined a strong evidentiary case with a much weaker case in the hope that the cumulation of evidence would lead to convictions in both cases"). As noted by the state court, "Petitioner does not address the substantial amount of evidence that was presented against him at trial as to both cases." (LD 16).

Based on the foregoing, under the "doubly deferential" AEDPA review of ineffective assistance of counsel claims, the state court's denial with respect to trial counsel allowing joinder of Petitioner's domestic violence and sexual assault charges for trial was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief on his first claim, and it should be denied.

### b. Appellate Counsel

In his second claim for relief, Petitioner asserts that appellate counsel was ineffective for failing to raise a claim of ineffective assistance of trial counsel regarding the joinder of the domestic violence and sexual assault charges for trial. (ECF No. 1 at 7). This claim was raised in all three of Petitioner's state habeas petitions. As set forth in section IV(A)(2), *supra*, the Court will "look through" the California Supreme Court's summary denial and examine the decision of the Madera County Superior Court.

Appellate counsel does not have a constitutional obligation to raise every nonfrivolous issue on appeal. Jones v. Barnes, 463 U.S. 745, 754 (1983). In fact, the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting Jones, 463 U.S. at 751–52). As discussed in section IV(A)(2)(a), *supra*, the state court reasonably concluded that trial counsel was not ineffective with respect to the joinder of the domestic violence and sexual assault charges for trial. Therefore, under the "doubly deferential" AEDPA review of ineffective assistance of counsel claims, the state court's denial with respect to appellate counsel's failure to raise trial counsel's error on direct appeal was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law

///

beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief on his second claim, and it should be denied.

### B. Erroneous Actual Innocence Claim

In his third claim for relief, Petitioner asserts that the state court abused its discretion by construing an actual innocence claim that was not asserted by Petitioner and denying habeas relief based on Petitioner's failure to articulate that claim. (ECF No. 1 at 8). Respondent argues that: (1) none of the state courts inserted any extrinsic claims into Petitioner's petitions or denied him relief based on such claims; (2) any mistake the lower state court made in construing Petitioner's claims should not be attributed to the California Supreme Court; and (3) Petitioner fails to state a federal constitutional claim. (ECF No. 16 at 20).

Petitioner's third claim for relief "alleg[es] errors in the state post-conviction review process [that] is not addressable through habeas corpus proceedings." Franzen v. Brinkman, 877 F.2d 26, 26 (9th Cir. 1989). Accord Cooper v. Neven, 641 F.3d 322, 331–32 (9th Cir. 2011) (finding due process claims arising out of the state trial court's consideration of a petitioner's state habeas petition were not cognizable for federal habeas review). Accordingly, Petitioner is not entitled to habeas relief on his third claim, and it should be denied.

### C. State Courts' Failure to Issue Orders to Show Cause

In his fourth claim for relief, Petitioner asserts that the state courts violated California Rule of Court 4.551(c) by failing to issue an order to show cause. (ECF No. 1 at 10). The Court finds such a claim is not cognizable in federal habeas corpus. See Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (per curiam) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law."); Wilson v. Corcoran, 562 U.S. 1, 5 (2010) (per curiam) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."); Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996) (citations omitted) ("We accept a state court's interpretation of state law, and alleged errors in the application of state law are not cognizable in federal habeas corpus."). Accordingly, Petitioner is not entitled to habeas relief on his fourth claim, and it should be denied.

///

## V.

## RECOMMENDATION

Based on the foregoing, the undersigned HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **February 12, 2021**         /s/ Erica P. Grosjean
                                     UNITED STATES MAGISTRATE JUDGE